Our next case for argument is O'Connell v. Alejo. We're ready to hear from the appellant. Your Honor, my name is Jeff Driscoll and I'm representing the appellant, Marcia Tuggle, in this matter. May it please the court? Yes. The district court erred in deciding that the law was clearly established and so the denial of qualified immunity for Marcia Tuggle in this matter should be reversed. The issue that was decided by the district court was the law clearly established in February 2003 that notes fabricated by a social worker during the course of a social services investigation violated an individual's constitutional rights associated with the separate criminal investigation and that constitutional violation claim was asserted only in relation to the rights associated with the criminal investigation, not the social services investigation. So the single claim against Ms. Tuggle in this matter is a 14th Amendment substantive due process violation which again is predicated solely on the criminal proceedings. No claims were asserted against Ms. Tuggle arising from the social services proceedings which included the removal of custody of Ms. O'Connell's son. Is it relevant in our consideration of clearly established law in these cases to look at the theory that the plaintiff ultimately pursues, that is, which is a constitutional violation, the Fourth Amendment, the 14th Amendment? It is, Your Honor. You think that's a decider? It's a factor in the clearly established law arena. So you think in this case we need a case that has a social worker fabricating notes that ends up violating Fourth Amendment rights in order to have clearly established law? So it doesn't have to... Yes, I believe that we need a case law that involves a social worker fabricating evidence which implicates a defendant's 14th Amendment rights. Yes. Mr. Driscoll, do you contend that any reasonable social worker would have thought the 14th Amendment will allow me to fabricate a report about child abuse for a social... because I'm only talking about whether to take her kids away. I'm not talking about a criminal investigation. Could anybody in Ms. Tuggle's position have thought that it was constitutionally permissible under the 14th Amendment for her to intentionally fabricate a report? So in the context of a social services investigation, if you look at the analogy to Fourth Amendment violations, what the Franks and Snell courts held is that just the fact that they fabricated evidence does not answer the question whether there was a constitutional violation. In the Franks v. Delaware case, the court simply said that that entitled the defendant to a hearing, and the defendant was only entitled to a hearing if that fabricated evidence was the sole basis for the issuance of the search warrant. And so just the fact that there was fabricated evidence in and of itself does not answer the question. So your answer would be, yes, someone like Ms. Tuggle could have thought, maybe I shouldn't be doing it, maybe my conscience will bother me. But there's nothing in the 14th Amendment that would prevent me from just fabricating that Ms. O'Connell, you know, killed this little boy. Right? Is that your answer? I mean, I don't know what's in your mouth. Either a reasonable social worker could have thought, the Due Process Clause allows me to fabricate a report or it doesn't. Well, the issue is, is whether or not there was precedent that would have guided her conduct. And so there is precedent. Well, that may be a question, you know, under, yeah, you know, under Hope v. Peltzer, whether that means anything. But that's really, I'm not trying to monopolize your time, but I'm really trying to get an answer to my question. And that is because that at the end of the day is the question for the clearly established problem. Malling v. Briggs, could a reasonable public official in this position have reasonably thought that this would be permissible under the Constitution? So it's just a simple question. Well, in the context of a social services investigation and claims arising out of a social services investigation, I think that she would have less solid ground to stand on. But you have to make the distinction here of the function that she was performing. And she was performing a social services investigation, as opposed to being an arm of the prosecutor or arm of the sheriff's office and actively participating in a criminal investigation. And that's the distinction that we're making here is that she was acting as her capacity as a social worker investigating child abuse as part of social services. She was not investigating whether a crime had been committed and who had committed that crime. Does it matter that her version is that Mr. Alejo was in the room and that she said, according to her testimony at trial, that when she said when she was asking questions, and then Mr. Alejo, the law enforcement officer, told Mr. Gaston, the husband, to leave. And then he started asking questions. And Ms. Tuggle was just sitting there while Mr. Alejo was asking questions, the law enforcement officer. And then when the law enforcement officer finished, then she asked questions. Does it matter in terms of your distinction, in terms of clearly established law precedent, that her version is that they were tag teaming Ms. O'Connell? So I don't believe that that's the factual sequence. So Sergeant Alejo first interviewed Mr. Gaston alone by himself, and then he interviewed Ms. O'Connell alone by himself. Then later that day, Ms. Tuggle, Mr. Alejo, Mr. Gaston, and Ms. O'Connell all went into a room. And Ms. Tuggle indicated that custody of their child was being taken away from them and was explaining the process for that. Sergeant Alejo then directed Mr. Gaston to leave, and Sergeant Alejo then started asking questions in relation to this criminal investigation. And so they were not tag teaming. And then after that, Ms. Tuggle did not then re-interview Ms. O'Connell. She simply was present in the room when Sergeant Alejo was conducting his criminal investigation. So circling back, Ms. O'Connell only relied on the Snell v. Tunnell case as having clearly established law in this matter. The district court then also included Franks v. Delaware. Neither of those cases clearly established the law in this matter. Franks v. Delaware involved law enforcement and did not involve a social worker. And as I alluded to earlier, the outcome of that case is that the court concluded that the defendant was entitled to a hearing. And only if it was concluded that the false evidence was the sole basis for the issuance of the warrant. And so the Franks court did not reach the conclusion that a constitutional violation had actually occurred. And under Apodaca v. Ramish, unless a court concludes that a constitutional violation occurred in the clearly established law context, that law cannot be binding precedent. And the Franks case is also factually dissimilar again because it involved law enforcement, it involved a criminal proceeding, and it involved the Fourth Amendment on reasonable search and seizure. But your closer case, and I think you have to admit this, is Snell. And there the court did determine that a social worker violated a constitutional right. Yes, that the social worker violated the Fourth Amendment search and seizure. That's correct. But the district court or the district court in that case concluded that the false information was the sole basis for the actions, the illegal activity that was taken to the deprivation of rights. And so it was following the direction that was given by Franks that in order to make a conclusion that there was a constitutional violation, you have to find that that false information was the sole basis for the constitutional violation having occurred. So if in this case, the mother's statements to the social worker are only used to corroborate evidence that was obtained by law enforcement, you would still find no constitutional violation. Well, in this case, there was other evidence which which contributed to her prosecution and conviction. And so if you carry over the Fourth Amendment reasoning of Franks and Snell, the judge in this case should have gone to taken an extra step and conducted that analysis. If you transpose the Fourth Amendment analysis onto the 14th analysis, which I don't believe would be correct under the Fourth Amendment unreasonable search and seizure, that's that's based on reasonableness. Whereas the 14th amendment substitute due process is whether or not the the that the conduct was so egregious that you got a different standard than other than reasonableness. So what you just said, though, that a minute ago, and maybe I'm wrong, that in Snell, which was a Fourth Amendment issue, that the court was specifically relying on Franks. And I think you just acknowledged that Franks was a due process case. And oddly, a court in Snell was to interpret the Fourth Amendment was, I think you were saying, was relying on a due process case. And so I'm not sure why they were so distinct, as you would suggest. And then the second distinction you made was that Snell was involving a social worker and Franks was involving a law enforcement officer. But again, if Snell was relying on a case involving a law enforcement officer, why are these distinctions so important that one's in law enforcement officer, one's a social worker, one's the Fourth Amendment, one's the 14th Amendment, if Snell was relying on Franks for both, despite both differences? Well, if I said that Franks also involved the 14th Amendment, I did not mean to because it only involved the Fourth Amendment. Okay, maybe I'm wrong. So the Rosca v. Peterson case was decided a couple of months after the conduct of the issue in this case. And in the Rosca case, they discussed Franz v. Little, and they discussed Snell v. Tuttle, and they indicated that based on those two cases, it calls into question and it puts beyond debate the standard that applies to the conduct of a social worker. And so even though that case was decided afterwards, even if Snell was binding precedent, Perry v. Dubrow says that if there's a case, a subsequent case that calls into a prior case, the clarity of that case or questions that case, then that places it beyond debate, and then that removes it from satisfying clearly established law. Your Honors, I'd like to reserve the remainder of my time to address anything that comes up. Thank you. Thank you. We're ready to hear from the appellee. Thank you. May it please the Court. My name is Elizabeth Wong on behalf of Plaintiff Crystal O'Connell. There are, this case is very straightforward. The combination of this Court's decisions in Snell v. Tuttle and Pierce v. Gilchrist foreclose Ms. Tuggle's argument. There is no jurisdiction. First of all, there is no jurisdiction over this appeal where Ms. Tuggle contests the facts. And she can't rephrase the question of clearly established law to say, was it clearly established at the time when the evidence was not used in the criminal case? What the District Court found in this case, which this Court has to accept on appeal, is what the District Court held in Appendix 1266. That they don't dispute that Ms. Tuggle participated in an investigation into Ms. O'Connell and that her participation contributed to Ms. O'Connell's deprivation of liberty. The claim that the plaintiff is raising here is a 14th Amendment procedural due process claim for the violation of her right to a fair trial. This right stems from a long line of cases from the Supreme Court going all the way back to Pyle v. Kansas, which was decided in 1942, and cases like Brady v. Maryland, which was decided in 1963. And to address some of the questions that your Honors raised, Pierce specifically involved a 14th Amendment due process claim for the fabrication of evidence. But that case is very distinguishable factually from our case, is it not? Because Gilchrist was part of law enforcement, you know? A forensic chemist who routinely, that was her job, was to run these tests and report back to law enforcement. That may be true, but what's not? Actually, it is true, but how does that affect our analysis here where we have a social worker who's not really an integral part of law enforcement? That's what Snell gives us. What Pierce gives us, and let me address both cases, what Pierce gives us is that it says it doesn't matter, this distinction between the Fourth Amendment and the 14th Amendment. If you knowingly, deliberately, and intentionally fabricate evidence, and that is used to deprive somebody of liberty, which Ms. Tuggle has to accept in the context of this appeal, because she does say in her reply brief that the fabricated evidence created by Tuggle was used in part to convict Ms. O'Connell at her criminal trial. What Pierce gives us is that it doesn't matter, and it says expressly at 1299 that the distinction between the Fourth Amendment and the 14th Amendment does not matter, because if you knowingly fabricate evidence, if it's used to deprive you of liberty, then that is a constitutional violation. Now, what Snell gives us, and we have to read these together, is that a social worker who fabricates evidence in the context of a Fourth Amendment claim and causes an unlawful search can't be entitled to qualified immunity, because it is just not reasonable for any social worker in that position to make up false evidence. And so what Mr. Driscoll is asking this court to say in this case is that Snell would have put, here's the logical conclusion that he wants you to reach, that Snell would have put a social worker on notice that you can't fabricate evidence to use to unlawfully search somebody's house, but that you might be able to fabricate evidence to wrongfully convict somebody and send them to prison for 10 years for something they didn't do. That is just not a reasonable conclusion. No reasonable social worker in that position, in Ms. Tuggle's position, would have thought that. So at the end of the day, the question is whether or not, and frankly, to take Ms. Tuggle's position to its logical conclusion, what she is saying is that not only was it not established in 2003, in February 2003, but it's not even clearly established today, because there's not some other case that happened between Snell and Gilchrist and these other cases. That would say directly that a social worker is responsible for, would be on notice that it's unreasonable to fabricate evidence for use in a 14th Amendment case. That is not a reasonable position for her to take, and it's foreclosed by this court's precedence in both Snell v. Tuggle and Pierce v. Gilchrist. So as an initial matter, given that Ms. Tuggle is not accepting the facts as found by the district court in this case, this court does not have jurisdiction to consider this appeal. If the court were to find that she does accept the facts, and she says in reply that she accepts that the fabricated evidence was used in part to deprive Ms. O'Connell of liberty, then the question, the answer to the question of whether it was clearly established that a public official could not fabricate evidence and use it to deprive somebody of liberty is clearly established. It's been established for decades, not only by the Supreme Court's precedence, and let me say, in Pierce, Pierce relied on Franks v. Delaware. Pierce involved a 14th Amendment claim, Franks involved a 4th Amendment claim, but this court saw no distinction in those claims. It expressly cited to Franks v. Delaware for the prohibition on the use of fabricated evidence to deprive somebody of constitutional rights, and it also cited all the way back to Pyle v. Kansas and Brady v. Maryland. What we need to keep in mind here is that Tuggle in this case is not somebody who, you know, what the court's cases have said is that, you know, qualified immunity is there to protect somebody who might, you know, not know that their conduct is on the line. You know, it's to give them breathing room to make mistakes. That's what qualified immunity is for. And this court and the Supreme Court has said, you know, is it that her conduct stemmed from a miscalculation of her constitutional duties? Did she undertake some legitimate public purposes that just went awry? And those are the kinds of cases where there's fine line drawing in 4th Amendment cases, in 8th Amendment deliberate indifference cases involving serious medical needs. Those are the kinds of cases that involve very close facts. This is not that case. Under Ms. O'Connell's set of facts, which the district court found, and again, must be accepted in this appeal, Ms. O'Connell was saying, I did not slam Kiron on the bed. I did not hurt him. I did not cause those bruises on his chest. And yet, Ms. Tuggle wrote down the opposite. And her motives are shown in her other notes, too, because she has another note, which is in the record at Appendix 226, where she wrote down that it's not imperative to enforce no contact between Kiron and his parents, unless we need to force a confession from the parents. So this is an intentional, deliberate fabrication of false evidence. This is not some social worker who was diligently going about her duties and made a mistake. Given those facts and given the concession that the fabricated evidence was used in the criminal case, the result of this appeal is clear. And I don't have any further argument, Your Honors, unless I am happy to take any questions that you may have. My colleagues are speechless. She's never seen that before. This is a new day on the court. Thank you. We will take the time. Mr. Driscoll. Well, Pierce v. Gilchrist was decided in 2004 after the alleged conduct in this matter. They were talking about what was clearly established in 1986. So what about that? They were referencing Fourth Amendment unreasonable search and seizure, specifically was that reference. It was not Fourth Amendment substantive process. Well, how do you deal with Ms. Wang's argument that, well, okay, that's true, but they were relying on Franks, as you pointed out in your first discussion, was a Fourth Amendment case, and yet Pierce dealing with the 14th Amendment was dealing with a Fourth Amendment precedent. Well, again, Franks is not binding precedent because no constitutional violation was found to have occurred in that case. Well, let me try it again because I don't know that this, sorry, I didn't realize it. Thanks for your time. Go ahead. So the last point I want to make is that we have to look at the function, because that's what Franz, Rosca, and Toscarino all tell us, that when you analyze the potential liability of a government act, you have to look at the function they perform. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted.